UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
JUL 3 1 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

SUZANNE P. BERST,

                Plaintiff,

      v.

COMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**

1:17-CV-00387 EAW

## INTRODUCTION

Plaintiff Suzanne P. Berst ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant," or the "Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. (Dkt. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Presently before the Court are the parties' cross motions for judgment on the pleadings (Dkt. 12; Dkt. 14) pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Plaintiff's motion (Dkt. 12) is denied and the Commissioner's motion (Dkt. 14) is granted.

## BACKGROUND

On March 21, 2013, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). (Dkt. 6 at 75-76).[1] She alleged disability beginning

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

December 31, 2012, due to learning disability, anxiety and depression, attention deficit disorder, and intense personality disorder. (*Id.* at 76-77). On April 24, 2015, Plaintiff and a vocational expert ("VE") appeared and testified before Administrative Law Judge William M. Weir ("the ALJ"). (*Id.* at 39-74). On February 12, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 11-26). On April 26, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's determination the final decision of the Commissioner. (*Id.* at 5-7). Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. (Dkt. 1).

## DISCUSSION

### I.  Legal Standard

#### A.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review

of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## B.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have a severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If the claimant cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1560(c).

## II.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ was unable to determine whether work activity that Plaintiff had engaged in since the alleged onset date constituted disqualifying substantial gainful work activity. (Dkt. 6 at 16-17). As a result, the ALJ concluded that Plaintiff had not engaged in substantial gainful work activity since the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff has the severe impairments of cervical and lumbar degenerative disc disease. (*Id.* at 17). The ALJ also found that Plaintiff has the following non-severe medically determinable impairments: anxiety disorder, affective disorder, attention deficit disorder, and a learning disability. (*Id.*). At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listed impairment. (*Id.* at 21).

- 4 -

Next, the ALJ determined that Plaintiff retains the RFC for perform medium work[2] with additional limitations. (*Id.*). Specifically, the ALJ found that Plaintiff "can only frequently stoop, carry, reach, push, and pull." (*Id.*). At step four, the ALJ relied on the VE's testimony and found that Plaintiff's RFC did not prevent her from performing her past relevant work.[3] (*Id.* at 24-25). Notwithstanding his step-four finding, the ALJ made an alternative step-five finding. (*Id.* at 25). At step five, the ALJ relied on the VE's testimony and found that Plaintiff can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. (*Id.*). Specifically, the VE testified that Plaintiff could work as a "parts worker," "patient transporter," "housekeeper," "bottling line attendant," or "remnant cutter." (*Id.* at 71-72). Accordingly, the ALJ concluded that Plaintiff was not "disabled" under the Act. (*Id.* at 26).

---

[2]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[3]     Plaintiff's past relevant work, according to the VE, correlated to jobs as a "general office clerk" and as a "teacher's aide." (Dkt. 6 at 70). The VE stated that both of those jobs are typically performed at a light exertional level and are semi-skilled positions. (*Id.*). However, the VE opined that Plaintiff actually performed each position at a medium to heavy exertional level. (*Id.*). The ALJ took these findings into account when determining whether Plaintiff could perform her past relevant work, stating, "While claimant's residual functional capacity would prevent her from returning to her past relevant work as it was actually performed . . . these jobs are generally performed at a light exertional level in the national economy." (*Id.* at 24). Finding the general exertional levels probative, the ALJ concluded that Plaintiff was able to perform her past relevant work. (*Id.* at 25).

III.  **Analysis**

Plaintiff argues that the ALJ erred at steps two, four, and five of the five-step sequential evaluation. (Dkt. 12-1 at 18). Specifically, Plaintiff contends that the ALJ erred at step two because he failed to find Plaintiff's anxiety, depression, ADHD, and learning disorder to be severe impairments. (*Id.* at 16). Plaintiff argues that the ALJ erred in his step four and step five findings because he failed to develop the record on Plaintiff's "chronic absenteeism" resulting from her mental impairments, and because he failed to include Plaintiff's mental limitations in the RFC. (*Id.* at 18).

A.  **The ALJ Did Not Err in Determining that Plaintiff's Mental Impairments are Not Severe**

Plaintiff first argues that the ALJ erred in determining that Plaintiff's mental impairments were not severe, despite strong medical evidence in the record. (*Id.* at 16). Defendant responds that substantial evidence in the record supports the ALJ's finding. (Dkt. 14-1 at 20).

When evaluating the severity of mental impairments at steps two and three of the five-step sequential evaluation, the SSA regulations require the application of a special technique. *See Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)).

> This technique requires "the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.' If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." It is mandatory that the ALJ's written decision "reflect application of the technique"; "the

decision '*must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'"

*Id.* (internal citations omitted) (citing *Kohler*, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a; 20 C.F.R. § 404.1520a(e)(4))). If the ALJ rates the claimant's degrees of functional limitations as "none" or "mild," he will generally conclude that the claimant's impairments are non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."[4] 20 C.F.R. § 404.1520a(d)(1).

After finding that Plaintiff had the medically determinable mental impairments of anxiety disorder, affective disorder, attention deficit disorder, and a learning disability, the ALJ evaluated Plaintiff's functional limitations resulting from those impairments in accordance with the required special technique. (*See* Dkt. 6 at 17-18). Based on substantial evidence, the ALJ found that Plaintiff had no limitations with activities of daily living or social functioning; a mild limitation in the area of concentration, persistence, or pace; and had experienced no episodes of decompensation. (*Id.*). As a result, the ALJ determined that Plaintiff's mental impairments were non-severe. (*Id.*).

In support of her argument that the ALJ erred in this determination, Plaintiff cites her various mental impairment diagnoses. (*See* Dkt. 12-1 at 16). However, "[t]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or

---

[4]     Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522.

treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at \*3 (N.D.N.Y. Feb. 7, 2012) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at \*2 (N.D.N.Y. Mar. 27, 2008)).

Plaintiff additionally cites the opinion of her treating psychologist, Dr. John Benjamins, in support of her argument, although she does not specify which functional area the ALJ should have found more limited based on this evidence. (*See* Dkt. 12-1 at 16). While this evidence does offer some support for Plaintiff's argument, Dr. Benjamins' medical source statement also expressly includes a determination that Plaintiff has only mild limitations in her ability to understand and remember simple and complex instructions, and no limitations in any other work-related mental activities. (*See* Dkt. 6 at 441-42). Where substantial evidence, such as this, exists "to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d. 444, 454 (S.D.N.Y. 2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Therefore, the ALJ did not err in determining that Plaintiff's mental impairments are non-severe.

**B.     The ALJ Did Not Fail to Develop the Record on Plaintiff's "Chronic Absenteeism"**

Plaintiff also argues that remand is required because, in connection with the VE's testimony that an unskilled employee would be terminated if she missed more than one day

of work per month, the ALJ failed to develop the record, as there is no medical opinion commenting on Plaintiff's ability to work a full-time schedule without excessive absences. (*See* Dkt. 12-1 at 16-18; Dkt. 6 at 73). Defendant responds that the ALJ was not required to further develop the record because the evidence in the record was "adequate for [the ALJ] to make a determination as to disability." (Dkt. 14-1 at 28 (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996))).

"The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000). "Indeed, consistent with this principle, courts have held that, in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments." *Staggers v. Colvin*, No. 3:14-CV-717 (JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48). "[T]he ALJ need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record." *Genito v. Comm'r of Soc. Sec.*, No. 7:16-CV-0143, 2017 WL 1318002, at *8 (N.D.N.Y. Apr. 7, 2017).

Plaintiff relies on two cases in support of her argument that the ALJ erroneously failed to develop the record: *McDonald v. Berryhill*, No. 16-CV-926-FPG, 2017 WL

5712304 (W.D.N.Y. Nov. 28, 2017), and *Trankle v. Berryhill*, No. 16-CV-846-FPG, 2017 WL 5988046 (W.D.N.Y. Dec. 4, 2017). (*See* Dkt. 12-1 at 17). Plaintiff states that these cases were "remanded . . . for payment of benefits because the record showed that the claimant[s] would miss more than one day per month due to their impairments." (*Id.*). However, Plaintiff mischaracterizes the reasoning in both cases. Neither case was remanded because the record showed that the claimant would miss more than one day of work per month; rather, each case was remanded because the respective ALJ violated the treating physician rule[5] by improperly declining to give controlling weight to the claimants' treating physicians' medical opinions, which stated that each claimant would have excessive absences from work. *See McDonald*, 2017 WL 5712304 at *3-6; *Trankle*, 2017 WL 5988046 at *3-7. Thus, these cases do not stand for the proposition that it is error for an ALJ to fail to request an opinion specifically on a claimant's absenteeism. Instead, these cases merely apply the treating physician rule in circumstances where the claimants' treating physicians happened to expressly opine on absenteeism.

In further support of her contention that she has a problem with "chronic absenteeism" as a result of her impairments, Plaintiff cites her own hearing testimony stating that she used to take a day off of work "[a]t least once a month" and "after a while . . . like, every other week." (Dkt. 12-1 at 17; *see* Dkt. 6 at 47). Plaintiff also cites treatment notes by one of her nurses at Suburban Psychiatric Associates, dated May 6, 2009, stating

---

[5]     The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded to a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527 (amended effective March 27, 2017)).

that she takes "1 day off a month for personal time or mental health day." (Dkt. 12-1 at 17; Dkt. 6 at 281). Additionally, Plaintiff cites treatment notes from her physician, Dr. Wendy Weinstein, dated April 14, 2014, which state that Plaintiff "had a couple of anxiety attacks where she had to go in the break room and work and sit for a few minutes." (Dkt. 12-1 at 17; Dkt. 6 at 400). Further, Plaintiff states that she was fired from her part-time job on March 7, 2015, "due in part to unexcused absences without notice." (Dkt. 12-1 at 17). Lastly, Plaintiff cites a physical capabilities evaluation completed by her chiropractor, Dr. Francisco Vaquero, dated May 5, 2015, which opines that Plaintiff would miss two work days per month due to pain. (*Id.*; Dkt. 6 at 435).

Despite Plaintiff's contentions, the ALJ did not fail to develop the record on Plaintiff's alleged "chronic absenteeism," as the record contains RFC assessments and treatment notes from Plaintiff's treating mental health professionals as well as a complete medical history. In his decision, the ALJ properly discredited Dr. Vaquero's opinion, noting that it lacks a foundation in the medical evidence and is inconsistent with Plaintiff's own allegations.[6] (Dkt. 6 at 23). Additionally, the record contains ample evidence to refute Plaintiff's claim that she has a "chronic absenteeism" problem. Treatment notes from Plaintiff's nurse at Suburban Psychiatric Associates from February 26, 2010, through May 1, 2012, make no mention of absences from work. (*See id.* at 287-306). Likewise, the treatment notes from Dr. Weinstein, cited by Plaintiff, mention Plaintiff's anxiety attacks

---

[6]     Furthermore, "because a chiropractor is not an 'acceptable medical source,' an ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources." *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)).

at work but do not mention Plaintiff missing any days from work. (*See id.* at 400-01). On the contrary, treatment notes by Dr. Weinstein dated August 5, 2014, and cited by the ALJ in his decision, state that "[g]oing to work is not an issue" for Plaintiff. (*Id.* at 20, 399). Plaintiff contends that this treatment note is not reflective of her alleged absenteeism because Dr. Weinstein found Plaintiff's affect to be bright that day, suggesting it was a "good day," and thus did not address her missing work on "bad days." (Dkt. 12-1 at 18). However, even on days where Dr. Weinstein found Plaintiff's affect to be constricted, there is no mention of Plaintiff missing work.[7] (*See, e.g.*, Dkt. 6 at 398, 400).

Plaintiff's claim that she was fired from her part-time job, which she held from December 16, 2013, until March 7, 2015 (*Id.* at 174), in part due to unexcused absences, is also misleading. There is no evidence in the record that Plaintiff missed work on more than one occasion and, moreover, Plaintiff received a warning not for excessive absences, but rather for one unexcused absence without prior notice. (*Id.* at 180). Furthermore, Plaintiff's second and third-and-final warnings were for unprofessional conduct, and emails exchanged between Plaintiff's final warning and her termination suggest that she was fired for improper conduct and for making too many mistakes, not for being absent. (*See id.* at 174-83).

---

[7]     *See also Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (recognizing that the claimant's bipolar disorder results in "better days and worse days" and that "a claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every day*" but that substantial evidence in record supported the ALJ's conclusion that the claimant, "with the proper treatment, could perform work on a regular and continuing basis." (emphasis in original)).

Lastly, the ALJ was not obligated to further develop the record on Plaintiff's alleged "chronic absenteeism" because other medical sources in the record shed light on Plaintiff's ability to work full time. Significantly, Dr. Benjamins' RFC evaluation, in which he found that Plaintiff had only mild mental limitations, considered Plaintiff's ability to do work-related activities on a sustained basis. (*See id.* at 441). As the form notes, "'[s]ustained basis' means the ability to perform work-related activities eight hours a day for five days a week, or an equivalent work schedule." (*Id.*). Likewise, consulting psychologist Dr. Gregory Fabiano opined that Plaintiff's mental impairments "[did] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.* at 376).

In sum, Plaintiff's argument that the ALJ failed to develop the record with regard to her absenteeism is unavailing, and remand is not required on that basis.

## C. The ALJ's Failure to Include Plaintiff's Mental Impairments in her RFC Constituted Harmless Error

Plaintiff's final argument is that the ALJ erred in failing to include her mental or cognitive limitations in his RFC determination. (Dkt. 12-1 at 18).

"Even where 'substantial evidence supports the ALJ's finding that [a claimant's] mental impairment was nonsevere, it would still be necessary to remand . . . for further consideration [where] the ALJ failed to account [for the claimant's] mental limitations when determining her RFC.'" *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740-41 (S.D.N.Y. 2018) (alterations in original) (quoting *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012)); *see also Schmidt v. Colvin*, No. 15-CV-2692 (MKB), 2016 WL

4435218 at *13 (E.D.N.Y. Aug. 19, 2016) ("Because the ALJ failed to account for the limitations imposed by Plaintiff's non-severe mental impairments, the Court remands for consideration of those limitations in determining Plaintiff's RFC."). Nonetheless, as explained by the Second Circuit:

> an ALJ's failure to incorporate non-exertional limitations in a hypothetical . . . is harmless error if (1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]

*McIntyre*, 758 F.3d at 152 (alterations in original) (internal quotation marks omitted).

Here, the two-part standard outlined in *McIntyre* is met. First, there is substantial evidence in the record demonstrating that Plaintiff can engage in simple, routine tasks or unskilled work despite her mild limitations in concentration, persistence, and pace. Dr. Benjamins found that Plaintiff had no limitations in her ability to carry out simple and complex instructions or to make judgments on simple and complex work-related decisions, and only mild limitations in her ability to understand and remember simple or complex instructions. (Dkt. 6 at 441). Dr. Fabiano also opined that Plaintiff did not appear to have any limitations in her ability to follow and understand simple directions and instructions, perform simple or complex tasks independently, learn new tasks, or make appropriate decisions. (*Id.* at 376). Second, the ALJ limited his hypothetical to the VE to include only

unskilled work.[8] (*Id.* at 71). Therefore, the Court concludes that the ALJ's failure to incorporate Plaintiff's mental limitations into his hypothetical to the VE constitutes harmless error. "The ALJ thus properly relied on the VE's testimony in response to this hypothetical and the resulting RFC determination when determining whether jobs existed in significant numbers in the national economy that [Plaintiff] could perform given her RFC." *Hansen v. Berryhill*, No. 16 Civ. 7272 (ER) (GWG), 2018 WL 910501, at *12 (S.D.N.Y. Feb. 15, 2018).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted. Plaintiff's complaint (Dkt. 1) is dismissed with prejudice. The Clerk of the Court is directed to enter judgment and close this case.

---

[8]     In his hypothetical, the ALJ limited the VE to "positions available at either the SVP 1 or SVP 2 levels[.]" (Dkt. 6 at 71).

> The Social Security regulations categorize occupations by the amount of skill needed for the job. A job thus is classified as unskilled, semi-skilled, or skilled. 20 C.F.R. § 404.1568. These skill levels, in turn, correspond to specific vocational preparation, or SVP, levels outlined in the *DOT*. SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' *DOT*, Appendix C, 1991 WL 688702. '[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9.' SSR 00-4p, 2000 WL 1898704, at *3.

*Crews v. Astrue*, No. 10 Civ. 5160(LTS)(FM), 2012 WL 1107685, at *12 n.35 (S.D.N.Y. Mar. 27, 2012) (emphasis and alteration in original). Thus, the ALJ limited his hypothetical to unskilled work.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: July 31, 2018
       Rochester, New York